**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CATRINA THOMPSON,** | ) | |
| | ) | **No. 16 C 7182** |
| **Plaintiff,** | ) | |
| | ) | **Magistrate Judge M. David Weisman** |
| **v.** | ) | |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Catrina Thompson appeals the Commissioner's decision denying her application

for Social Security benefits. For the reasons set forth below, the Court reverses the

Commissioner's decision.

**Background**

Plaintiff filed an application for benefits on May 22, 2013. (R. 74.) Her application was

denied initially on September 9, 2013, and again on reconsideration on June 3, 2014. (R. 74, 87.)

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on

August 11, 2015. (R. 29-65.) On August 15, 2015, the ALJ issued a decision denying plaintiff's

application. (R. 12-22.) The Appeals Council denied review (R. 1-3), leaving the ALJ's

decision as the final decision of the Commissioner. *See Villano v. Astrue*, 556 F.3d 558, 561-62

(7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the regulations, the Commissioner must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the claimant's impairment meets or equals any listed impairment; (4) if not, whether the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) if not, whether she is unable to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden is met, the burden shifts at step five to the Commissioner to provide evidence that the claimant is capable of performing work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 15, 2013. (R. 14.) At step two, the ALJ found that plaintiff has the severe impairments of "congestive heart failure, obesity, non-ischemic cardiomyopathy, and status post implantation of defibrillator." (*Id.*) At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 16.) At step four, the ALJ found that plaintiff cannot perform her past relevant work but has the residual functional capacity ("RFC") to perform sedentary work with additional restrictions. (R. 14-21.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, and thus she is not disabled. (R. 21-22.)

Plaintiff contends that the ALJ improperly concluded, despite an agency doctor's contrary opinion, that plaintiff's anxiety disorder is a non-severe impairment. With respect to this issue, the ALJ said:

> I appreciate that a state agency reviewing doctor found that the claimant's depression and anxiety were severe impairments and assessed moderate limitations in maintaining concentration, persistence or pace. However, I do not assign any weight to this opinion, based on the longitudinal record. This opinion by the state agency reviewing doctor appears to be based on the psychological consultative examination in May 2014, when the claimant appeared sad and depressed and could not recall items after three and five minute delays. However, the same month, the claimant was started on Lexapro[1] prescribed by her primary physician, who did not perform a mental status examination. The record does not contain any updated records from her primary physician. I also note that at the hearing, the claimant testified that for the past four months, she has been taking paralegal classes online for 2-3 hours per day and this is going well.

---

[1] Lexapro is a medication "used to treat depression and generalized anxiety disorder." http://www.mayoclinic.org/drugs-supplements/escitalopram-oral-route/description/drg-20063707 (last visited Feb. 1, 2017).

This suggests greater abilities in maintaining concentration, persistence or pace than assessed by the state Agency psychological consultant. Given the longitudinal record, I find that the claimant's depression and anxiety are not severe impairments.

(R. 16) (citations omitted).

The agency doctor did not examine or treat plaintiff, and thus the ALJ only had to credit his opinion if it was supported by, and consistent with, the record as a whole. *See* 20 C.F.R. § 404.1527(c). The agency doctor's opinion is neither, because as the ALJ pointed out, it is based on an examination of plaintiff that occurred before she started taking anti-depressants and is contradicted by her testimony that she spends several hours a day taking on-line classes. Moreover, though not mentioned by the ALJ, the Court notes that the agency doctor is an obstetrician, not a psychologist (*see* R. 86-87); Social Security Administration, Program Operations Manual System, DI 24501.004 Medical Specialty Codes, available at https://secure.ssa.gov/poms.nsf/lnx/0424501004 (last visited November 28, 2016), and his opinion is internally inconsistent. Though he characterizes plaintiff's mental impairments as "severe," he also states that they impose only a "mild" restriction on her activities of daily living and ability to maintain social functioning, and a "moderate" restriction on her ability to maintain persistence, concentration or pace. (R. 79-80.) In short, the record supports the ALJ's rejection of the agency doctor's opinion.

Plaintiff also argues that the ALJ erred in rejecting the opinion of plaintiff's treating physician, Dr. Meeks. (*See* R. 17.) An ALJ must give a treating physician's opinion controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require [him] to consider the length, nature, and extent of the treatment

relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion," in assessing the opinion. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see* 20 C.F.R. § 404.1527(c).

Dr. Meeks opined that plaintiff meets Listing 4.02 for chronic heart failure, has severe cardiomyopathy,[2] an ejection fraction of 30%,[3] "significant shortness of breath with exertion," "intermittent chest pain," and "is barely able to walk one block without symptoms of dyspnea[4] and fatigue." (R. 103.) Dr. Meeks also said that plaintiff could only lift five pounds, stand or walk less than one hour of an eight-hour workday, and sit for only two hours of an eight-hour workday. (R. 104.)

The ALJ gave Dr. Meeks' opinion "no weight" because she "is only a family practitioner, not a specialist," and her opinion is "inconsistent with the longitudinal medical evidence," which "indicate[s] that the claimant [has] functional class II [heart failure]" (R. 20), *i.e.*, which only imposes a "[s]light limitation [on] physical activity." *See* Am. Heart Ass'n, http://www.heart.org/HEARTORG (follow "Conditions" hyperlink; then follow "About Heart Failure" hyperlink; then follow "Classes of Heart Failure" hyperlink) (last visited Feb. 1, 2017).

To meet Listing 4.02 for chronic heart failure, plaintiff must have an "ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure)" and:

> 1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or

---

[2]"Cardiomyopathy "is a condition where the heart muscle is abnormal." http://www.mayoclinic.org/diseases-conditions/cardiomyopathy/basics/definition/con-20026819 (last visited Feb. 1, 2017).

[3]"Ejection fraction is a measurement of the percentage of blood leaving [the] heart each time it contracts." http://www.mayoclinic.org/ejection-fraction/expert-answers/faq-20058286 (last visited Feb. 1, 2017). An "ejection fraction of 55 percent or higher is considered normal." *Id.*

[4]Dyspnea is the medical term for shortness of breath. http://www.mayoclinic.org/symptoms/shortness-of-breath/basics/definition/sym-20050890 (last visited Feb. 1, 2017).

2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period . . . with evidence of fluid retention . . . from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization . . . ; or

3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:
a. Dyspnea, fatigue, palpitations, or chest discomfort; or
b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or
c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise . . . due to left ventricular dysfunction, despite an increase in workload; or
d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R. § 404, subpt. P, app. 1, listing 4.02.  The record shows that plaintiff had an ejection fraction of less than thirty percent on various occasions.  (R. 381, 478.)  But it does not show that any doctor has barred her from taking an exercise test[5] or, despite several emergency room visits, that she had three episodes of acute congestive heart failure with fluid retention in one year. Thus, the record supports the ALJ's rejection of Dr. Meeks' opinion that plaintiff meets Listing 4.02.

But that was not Dr. Meeks' only opinion.  Dr. Meeks also stated that plaintiff can only stand or walk for one hour and sit for less than two hours of an eight-hour workday, "has significant shortness of breath with exertion," and "can barely walk one block without [shortness of breath] and fatigue."  (R. 227-28.)  The ALJ said these opinions were inconsistent with plaintiff's medical records, which show that she has class II heart failure.  (R. 20.)  For a person with Class II heart failure, however, "[o]rdinary physical activity results in fatigue, palpitation, or dyspnea (shortness of breath)," the precise symptoms Dr. Meeks attributes to plaintiff.  *See*

---

[5]The lack of a finding that plaintiff cannot conduct an exercise tolerance test excludes options 1 and 3 as a means of establishing disability.

Am. Heart Ass'n, http://www.heart.org/HEARTORG (follow "Conditions" hyperlink; then follow "About Heart Failure" hyperlink; then follow "Classes of Heart Failure" hyperlink) (last visited Feb. 1, 2017).   Thus, the inconsistency cited by the ALJ is illusory.

The ALJ also rejected Dr. Meeks' testimony because her specialty is family practice, not cardiology.  (R. 20.)  But the opinions the ALJ accepted were from doctors who, unlike Dr. Meeks, had not treated or examined plaintiff, and whose specialties are anesthesiology and obstetrics, respectively.  (*See* R. 74, 87); *see also* Social Security Administration, Program Operations Manual System, DI 24501.004 Medical Specialty Codes, available at https://secure.ssa.gov/poms.nsf/lnx/0424501004 (last visited Feb. 1, 2017).  The ALJ does not explain why these specialties make the opinions of the non-treating agency doctors more reliable than that of treating physician Dr. Meeks.  *See Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (per curiam) (stating that "a contradictory opinion of a non-examining physician [is] not, by itself," a sufficient basis for rejecting a treater's opinion); *see also Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("An ALJ must offer good reasons for discounting the opinion of a treating physician.") (quotation omitted).

In sum, the record does not support the ALJ's rejection of Dr. Meeks' opinions in favor of those of the non-examining doctors.  Accordingly, the case must be remanded for reconsideration of the medical evidence.[6]

---

[6]Plaintiff also contests the ALJ's credibility determination (an inquiry now known as symptom assessment). Because that determination depends, at least in part, on a proper evaluation of the medical evidence, on remand the Commissioner will have to revisit the credibility/symptom assessment issue as well.

**Conclusion**

For the reasons set forth above, the Court grants plaintiff's motion for summary judgment [11], denies the Commissioner's motion for summary judgment [19], reverses the Commissioner's decision, and remands this case for further proceedings. This case is terminated.

**SO ORDERED.**                                          **ENTERED:   February 6, 2017**

**M. David Weisman**
**United States Magistrate Judge**